IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RUSSELL KEITH GAULT,

    Plaintiff,

v.                                     CASE NO. 1:20-cv-123-AW-GRJ

UNITED STATES OF AMERICA,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff initiated this case by filing a complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b) and §§ 2671-2680 ("FTCA"). Plaintiff is proceeding pursuant to an Amended Complaint, ECF No. 5 (hereafter "Complaint"). This case is now before the Court on ECF No. 12, the United States' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the following reasons, it is respectfully recommended that the Complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## I. <u>Background</u>

Plaintiff alleges that on the night of May 6, 2016, he was being treated for an "elevated mood episode" at the Malcolm Randall VA Medical Center. Plaintiff asked Nurse Jordan to raise the temperature in Plaintiff's room. Jordan instead lowered the temperature. Plaintiff later requested again that Jordan raise the temperature. Plaintiff alleges that Jordan laughed and raised the temperature "significantly," making Plaintiff's room "uninhabitable". Plaintiff asked Nurse Branca for an alternative place to sleep but Branca stated that nothing was available. Plaintiff tried to sleep on the hallway floor, but was unable to sleep and his mood became more elevated. ECF No. 5 at 6-7, 11.

The following morning, Plaintiff asked Nurse Delany to lower the temperature in his room. He alleges that Delany "mocked" him "by making an exaggerated sad face." *Id.* at 11. Plaintiff alleges that throughout the morning and afternoon of May 7 he repeatedly complained that his room was uninhabitable. Plaintiff did not sleep and his mood became more elevated. *Id.*

In the early afternoon, Nurse Greif offered Plaintiff a "seclusion room" in which to sleep. When Greif could not explain why a seclusion room was not offered to him earlier, Plaintiff's mood became "more elevated than it had

ever been during my thirty-two years of being bipolar." Plaintiff began "shouting uncontrollably". He alleges that Greif guaranteed that he would not be injected with drugs against his will if he accepted her offer to enter the seclusion room. Plaintiff entered the seclusion room, and after 15 minutes of shouting and banging on the walls he became exhausted and laid down on a mattress. He alleges VA employees then entered the seclusion room and injected him with drugs against his will. He alleges that Delany performed the injection, laughing as she did so. *Id.* at 12.

Plaintiff claims that "[n]othing inflicts greater emotional distress upon me than an elevated mood episode, including severe outrage, indignation, disconcertion, anguish, apprehension, anxiety, and betrayal. My episode was aggravated from 06 May 2016 through 25 June 2016." For relief, Plaintiff seeks $250,000 in damages. *Id.* at 7.

Plaintiff alleges that he submitted an administrative claim under the FTCA on April 2, 2018.[1] ECF No. 5 at 9. The claim was denied by letter

---

[1] The FTCA provides that a tort claim against the United States will be "forever barred" unless "it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. *See* 28 U.S.C. § 2401(b). "The general rule is that a claim under the FTCA accrues at the time of injury." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999) (citation omitted).

dated February 19, 2020.  *Id.*  This case was filed on May 22, 2020.  *See* ECF No. 1.

The United States' motion to dismiss, ECF No. 12, first observes that the Amended Complaint "appears to assert a medical malpractice claim under the FTCA."  ECF No. 12 at 3.  Defendant argues that the acts alleged by Plaintiff, even if true, do not fall within the statutory definition of medical malpractice under Florida law.  Defendant contends that the only allegation that pertains to rendering of medical treatment is the claim that Plaintiff was given an injection to sedate him because he was shouting and banging on the walls.  However, Plaintiff does not allege that he was given the wrong kind of injection or that the nurses breached any duty of care by giving him the injection.  *Id.* at 4-5.  Defendant argues that if the acts alleged in the Amended Complaint sound in medical malpractice, then the Florida malpractice statute will be expanded far beyond its intended scope.  *Id.* at 5.

Next, Defendant argues that even if the Amended Complaint states a cognizable medical malpractice claim under the FTCA this Court lacks subject matter jurisdiction based on Florida's statute of repose.  *See* Fla. Stat. § 95.11(4)(b) ("in no event shall [a medical malpractice action] be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.").  Defendant concedes that there

is a split of authority on whether the FTCA preempts the Florida statute, but argues that the better view is that because Plaintiff's claim would be barred if brought against a private party, it should not stand against the United States pursuant to the FTCA's incorporation of the substantive law of the state where the claim arose.  ECF No. 12 (citing *Spann v. United States*, No. 11-CV-23178-KMM, 2012 WL 3776684, at *5 (S.D. Fla. Aug. 30, 2012) (holding that "any Plaintiff who did not bring their claim within four years of their colonoscopy is barred under Florida's statute of repose"); *but see Blau v. United States*, No. 8:12-CV-2669-T-26AEP, 2013 WL 704762 (M.D. Fla. Feb. 26, 2013) (Florida's statute of repose is preempted by FTCA); *Huntoon v. United States*, No. 1:14CV178-MW/GRJ, 2017 WL 11500195, at *2 (N.D. Fla. Sept. 23, 2017) (same).

In opposition to dismissal, Plaintiff clarifies that it was the "negligent or wrongful operation of the building's HVAC system" that rendered his room uninhabitable and caused him to suffer sleep deprivation, which severely aggravated his elevated mood.  ECF No. 17 at 4-6.  He contends that the VA's psychiatric ward employees' acts of laughing at him and mocking him are "not part of the basis" for his claim, but rather reflect indifference to rendering proper medical care, and that acts which deprived him of sleep amount to a breach of the prevailing professional standard of care.  *Id.* at 6.

Plaintiff represents that injecting him with drugs against his will "was not a wrongful act, and is not part of the basis for the claim," but rather reflects that his condition had become severely aggravated. *Id.* at 6-7. Plaintiff asserts that the employees' acts were contrary to the VHA Handbook governing inpatient mental health services. He concludes that Defendant had a duty of care to him, breached that duty, that the breach was the proximate cause of injury to him, and that he suffered actual damages, thereby giving rise to tort liability. ECF No. 21 at 3-10. He further argues that Florida's statute of repose is preempted by the FTCA, and therefore his complaint is timely. ECF No. 17 at 8-17.

## II. <u>STANDARD OF REVIEW</u>

Determining whether a complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted turns on whether the plaintiff has alleged sufficient plausible facts to support his claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As the Supreme Court held in *Twombly,* "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 555.

*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

Sovereign immunity protects the federal government and its agencies from civil liability. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996 (1994). The FTCA, however, provides a limited waiver of sovereign immunity for tort claims. *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). The FTCA confers on federal district courts exclusive jurisdiction to hear claims against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28

U.S.C. § 1346(b)(1). The limited waiver of sovereign immunity is strictly construed in favor of the United States. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491, 126 S.Ct. 1252 (2006). The FTCA makes the United States liable to the same extent as a private individual under similar circumstances under the law of the place where the tort occurred, subject to enumerated exceptions to the immunity waiver. *Levin v. United States*, 568 U.S. 503, 506-07, 133 S.Ct. 1224, 185 L.Ed.2d 343 (2013).

The Court turns first to Defendant's argument that the Amended Complaint is due to be dismissed for failure to state a claim, because that issue is dispositive of this case. Florida law defines "medical malpractice" as "a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). The fact that a claim arises in a medical setting does not transform an ordinary negligence claim into one for medical malpractice. *See, e.g., Holmes Reg'l Med. Ctr., Inc. v. Dumigan,* 151 So. 3d 1282, 1286 (Fla. 5th DCA 2014) ("It is axiomatic that the mere fact that a wrongful act occurs in a medical setting does not automatically transform the contested action into one that sounds in medical malpractice . . . ."); *Lynn v. Mount Sinai Med. Ctr., Inc.*, 692 So. 2d 1002, 1003 (Fla. 3d DCA 1997) ("Merely because a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice.").

The Florida Supreme Court recently addressed the difference between a medical malpractice claim and an ordinary negligence claim:

> [W]e hold that for a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill. This inquiry involves determining whether proving the claim requires the plaintiff to establish that the allegedly negligent act "represented a breach of the prevailing professional standard of care," as testified to by a qualified medical expert. Our holding will allow ordinary negligence cases to proceed without requiring the plaintiff to obtain a presuit corroborating expert and follow the additional matrix of presuit procedures, while still advancing the Legislature's policy goals of encouraging the early settlement of meritorious and screening out frivolous medical malpractice claims. *See Kukral v. Mekras*, 679 So.2d 278, 284 (Fla. 1996).

*Natl. Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 311–12 (Fla. 2018).

In *Townes*, a staff member at a residential treatment facility placed the plaintiff in a restraint hold which caused the plaintiff to fall and injure her leg, ultimately resulting in amputation. The Florida Supreme Court determined that the act of restraining the plaintiff did not give rise to a claim that sounds in medical malpractice because the act was not "directly related to medical care or services, which require the use of professional judgment or skill." *Townes,* 242 So. 3d at 305.

Applying analogous reasoning, Florida courts have declined to find, for example, that a case presented a medical malpractice claim where a nurse spilled hot tea on a patient, resulting in severe burns:

> This is simply a claim that arises out of the act of serving a cup of hot tea. This is not a claim that arises out of the nurse's medical judgment in giving Quintanilla the hot tea. The process of serving tea did not involve medical skill or judgment. The injury is not a direct result of receiving medical care from the provider. Even though, arguably, the nurse may have used her medical judgment to agree with Quintanilla's request for hot tea to help his condition, the process of serving the hot tea did not require medical skill or judgment.

*Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469–71 (Fla. 3d DCA 2006); *see also Joseph v. University Behavioral LLC,* 71 So.3d 913, 919–20 (Fla. 5th DCA 2011) (finding that the administrative decision not to separate patients where one patient attacked another did not involve medical judgment and did not sound in medical malpractice)*; Lynn,* 692 So.2d at 1003 (improper collection and labeling of a urine specimen taken for purposes of drug testing sounded in ordinary negligence); *Lakeland Reg'l Med. Ctr., Inc. v. Allen*, 944 So. 2d 541, 543–44 (Fla. 2d DCA 2006) (claim stemming from patient's illness due to food poisoning while hospitalized did not sound in medical malpractice); *Buchanan v. Lieberman, M.D.,* 526 So.2d 969, 972 (Fla. 5th DCA 1988) (finding that a treating physician's improper touching did not sound in medical malpractice).

In view of the applicable standard, this Court can readily find that the Malcolm Randall VA Hospital's nursing staffs' "negligent or wrongful operation of the building's HVAC system" was not "directly related to medical

care or services, which require[d] the use of professional judgment or skill." See ECF No. 17 (Plaintiff's description of claim); *Townes*, 242 So. 3d at 311–12. Plaintiff's allegations reflect that the staff was merely responding to his requests to adjust the temperature in his room. That act required no medical professional judgment or skill. Even if they did so incorrectly or with the intent to render Plaintiff's room "uninhabitable," such acts simply do not give rise to a medical malpractice claim.

This Court may liberally construe the Amended Complaint as asserting some other tort claim, such as intentional or negligent infliction of emotional distress, but the facts alleged still do not state a cognizable claim. Under Florida law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004). The issue of whether the activities of the defendant rise to the level of being extreme and outrageous is a legal question for the court to decide as a matter of law. *Baker v. Fla. Nat'l Bank*,

559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990).  Outrageous conduct occurs when:

> [T]he conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Paul v. Humana Med. Plan, Inc.*, 682 So. 2d 1119, 1121 (Fla. Dist. Ct. App. 1996).

Even accepting Plaintiff's allegations as true and construing them in his favor, the Amended Complaint does not establish that the nursing staff engaged in outrageous conduct.  Even if they intentionally made Plaintiff's room too hot or too cold for Plaintiff, such conduct is not "atrocious, and utterly intolerable in a civilized community." *See id*.  Similarly, mocking Plaintiff or making exaggerated sad faces in response to him, while perhaps unprofessional, cannot be deemed "outrageous" as necessary to support a tort claim.  While the Court accepts as true Plaintiff's allegations that he suffered emotional distress that exacerbated his mood disorder, the staff's actions did not rise to the required level of outrageous or extreme conduct under Florida law. *See id.*

Plaintiff's factual allegations also do not support a claim for negligent

infliction of emotional distress.  "Florida does not recognize the tort of negligent infliction of emotional distress. Rather, under Florida law, recovery of damages for negligent infliction of emotional distress is not permitted unless the plaintiff manifests some physical injury as a result of the emotional trauma." *Gonzalez–Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1200–01 (M.D. Fla. 2002).  In Florida, the elements of negligent infliction of emotional distress are: (1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person. *Fernander v. Bonis*, 947 So.2d 584, 590 (Fla. 4th DCA 2007).  First, Plaintiff's allegations do not reflect that he suffered any physical injury as a result of psychological trauma allegedly inflicted by the nursing staff. Second, Plaintiff's claims concern injury to himself, not to another. Accordingly, the Amended Complaint, even liberally construed, fails to state a claim for negligent infliction of emotional distress.

For these reasons, Plaintiff's Amended Complaint is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Because Plaintiff's factual allegations fail to state any cognizable tort claim upon which relief could be

granted, it is unnecessary to determine whether the Amended Complaint is barred by Florida's statute of repose.

Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," leave to amend "should be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a). Under *Foman*, however, a district court may properly deny leave to amend the complaint when such amendment would be futile. *Foman*, 371 U.S. at 182. Under the facts presented, the Court concludes that amendment of the Complaint would be futile because the facts alleged in the Amended Complaint do not support any cognizable claim for relief.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. 12, should be **GRANTED,** and the Amended Complaint, ECF No. 5, **DISMISSED** with prejudice.

**IN CHAMBERS** this 22nd day of July 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.