IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RUSSELL KEITH GAULT,

    Plaintiff,

v.                                                       CASE NO. 1:20-cv-123-AW-GRJ

UNITED STATES OF AMERICA,

    Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff, Russell Gault ("Gault"), proceeding *pro se*, initiated this case by filing a complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), for injuries he allegedly suffered at a local VA medical facility in May of 2016. ECF No. 1.  Plaintiff thereafter proceeded on an amended complaint, ECF No. 5.  The Court dismissed the amended complaint on two grounds.  First, the Court lacked subject matter jurisdiction over Plaintiff's medical malpractice claims which were barred by the statute of repose.  ECF No. 25 at 3.  Second, Plaintiff failed to state a claim of ordinary negligence. *Id*. at 6.  The Court, however, gave Plaintiff leave to amend his pleading to assert a claim against the Government for negligent infliction of emotional distress ("NIED") and/or ordinary negligence.  *Id*. at 4-6.  Plaintiff amended

his complaint in accordance with the Court's Order.  ECF No. 26.  Now, pending before the Court is the United States' Motion to Dismiss the Second Amended Complaint.  ECF No. 28.  Plaintiff opposes the motion, ECF No. 29, and the issue is ripe for resolution.

The Court concludes that the Second Amended Complaint contains sufficient allegations to state a claim of ordinary negligence in a medical setting as discussed below.  Gault's NIED claim, however, fails because he does not allege that the "impact" sustained— VA personnel's injection of a sedative into his arm— either resulted in a physical injury, or that Gault's emotional distress was closely linked with the impact sufficient to state a NIED claim.  Accordingly, Plaintiff's NIED claims is due to be dismissed but the case may proceed only on Plaintiff's claims for ordinary negligence.

## I.  Background

The facts, accepted as true, are taken from Gault's second amended complaint.  On May 5, 2016, Gault admitted himself to the psychiatric ward at the Malcolm Randall VA Medical Center in Gainesville, Florida for treatment for a manic episode spawned by his bipolar disorder.  ECF No. 26 at 2.  On the second night of treatment (May 6, 2016), Gault asked the nurse to raise his room temperature so he could sleep.  ECF No. 26 at 3. Instead, the nurse lowered the temperature.  Once again Gault requested the nurse to

increase the room temperature. *Id*. This time, the nurse raised the temperature to an "uninhabitable" 80 degrees Fahrenheit. *Id*. Throughout the early morning and afternoon of May 7, 2016, Gault repeatedly asked the nurses to move him to a different room so he could sleep, but they refused. *Id*. at 4. To attempt to get some relief, Plaintiff tried to sleep on the hallway floors. *Id*. at 3. For fifteen (15) hours, Gault "stomped through the psychiatric ward hallways shouting, I need sleep!" at the top of his lungs, begging to be re-located because his mania was worsening due to sleep deprivation. *Id*. At 4:00 pm on May 7th, the nurses offered Gault a seclusion room. *Id*. The seclusion room had been available the entire time Gault requested a place to sleep, yet the nurses failed to offer it to him until he became unhinged and was shouting uncontrollably. *Id*. at 4-5. As a result of his sleep deprivation, Gault alleges his medical condition worsened substantially.

    Once locked inside the seclusion room, Gault banged the palms of his hands on the glass window and on the door, shouting obscenities at the nurses. *Id*. at 5. After fifteen minutes of shouting and banging, VA employees entered the seclusion room and injected Gault with a sedative (against his will) to calm his severe agitation and induce sleep. ECF No. 26 at 6. Gault says he suffered emotional distress as a result of the injection

because the same nurse who had mocked him and refused to re-locate him to another room administered the shot. *Id*.

For relief, Gault seeks $250,000 in damages. *Id*. at 13.

## II.  Standard of Review

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

The government is immune from suit unless it waives its sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994) (citations omitted). "The FTCA provides a limited waiver of sovereign immunity for tort claims." *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). The FTCA confers on federal district courts exclusive jurisdiction to hear claims against the United States for money damages "for injury…. caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope

of his office or employment." 28 U.S.C. § 1346(b)(1). In the FTCA context, the general rule that "a waiver of the Government's sovereign immunity will be strictly construed… in favor of the sovereign" is not implicated. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491-92, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006).

The FTCA does not create new causes of action. Rather, the Act "only serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A. v. United States,* 967 F.2d 965, 969 (4th Cir.1992) (citations omitted). Simply stated, the ultimate issue is whether a private person could be held liable in Florida if he or she were to commit the acts alleged in the Complaint to have been committed by the Government agents, under the same or similar circumstances. *See Rayonier, Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

The FTCA makes the United States liable to the same extent as a private individual under similar circumstances under the law of the place where the tort occurred, subject to enumerated exceptions to the immunity waiver. *Levin v. United States*, 568 U.S. 503, 506-07, 133 S.Ct. 1224, 185 L.Ed.2d 343 (2013). Although the government has waived its immunity for

tort claims brought under the FTCA, the FTCA explicitly excludes intentional torts like abuse of process, misrepresentation, and deceit from this waiver. *Alvarez v. United States*, 862 F.3d 1297, 1302 (11th Cir. 2017).

### III.  Discussion

In light of the Court's prior rulings, the issues to be decided are whether Gault's Second Amended Complaint states a claim for ordinary negligence in a medical setting and/or whether Gault states a NIED claim against the Government under Florida law.

**A.     Ordinary Negligence Claim.**

"In Florida, courts decide whether a complaint alleges a claim for medical malpractice as a matter of law." *Sapp ex rel. Brown v. United States*, Case No. 1:18-cv-176-AW-GRJ, 2021 WL 4987182, *1 (N.D. Fla. Apr. 9, 2021) (*citing Nat'l Deaf Acad., LLC v. Townes*, 242 So.3d 303, 308 (Fla. 2018)).  "Whether a claim arises from ordinary negligence or medical malpractice has significant implications" and therefore "any doubt as to whether a claim is for ordinary negligence or medical malpractice should be generally resolved in favor of the claimant." 2021 WL 4987182, *1 (citation omitted).

To succeed on an ordinary negligence claim in Florida, a plaintiff must "show that the defendant owed a duty of care to the plaintiff, that the

defendant breached the duty, that the breach caused plaintiff's injury, and that damages are owed." *Ewing v. Sellinger*, 758 So.2d 1196, 1197 (Fla. 4th DCA 2000) (citations omitted). Thus, a cause of action for negligence has four elements: (1) the existence of a duty recognized by law; (2) breach of that duty; (3) injury or damage recognized by law; and (4) a sufficient causal connection between the injury and the breach of duty. *See, e.g., Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003); *Horton v. Freeman*, 917 So.2d 1064, 1066 (Fla. 4th DCA 2006).

For an ordinary negligence claim in a medical setting to survive, the act complained-of must not be "directly related to medical care or services, which require the use of professional judgment or skill." *Nat'l Deaf Acad.*, 242 So.3d at 305, 311. If a plaintiff must establish that the allegedly negligent act "represented a breach of the prevailing professional standard of care as testified by a qualified medical expert," then the claims sound in medical malpractice, not in ordinary negligence. *Id.* at 311-12 (internal quotation marks omitted). *See Mobley v. Gilbert E. Hirschberg, P.A.,* 915 So.2d 217, 219 (Fla. 4th DCA 2005) (describing the essence of an action for medical malpractice: "'The alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill.'" (quoting *Reeves v. N. Broward Hosp.*

*Dist.,* 821 So.2d 319, 322 (Fla. 4th DCA 2002))); *see also Jackson v. Biscayne Med. Ctr., Inc.,* 347 So.2d 721, 722 (Fla. 3d DCA 1977) ("The fact that these acts originate, rather remotely, from a hospital-patient relationship, will not bring them into the ambit of medical malpractice. To hold otherwise would lead to the absurd result that every wrongful act committed by a hospital employee in a hospital surrounding amounts to medical malpractice.").

The Court concludes for the following reasons that Gault's Second Amended Complaint contains sufficient allegations to state a claim for ordinary negligence in a medical setting under Florida law.[1]

First, Gault alleges that the VA hospital and its staff owed him a duty of care once he committed himself into their care. EC No. 26 at 9. Indeed, "[w]here a patient has surrendered himself to the custody, care and treatment of a psychiatric hospital and its staff, liability may be predicated upon the hospital's failure to take protective measures to prevent the patient from injuring himself" while the patient is in custody. *Paddock v. Chacko,* 522 So.2d 410, 417 (Fla. 5th DCA 1988). This specific "duty is based solely on the fact of the patient's confinement in the hospital, and the hospital's

---

[1] Notably, the Government does not address Plaintiff's claims for ordinary negligence in its Motion to Dismiss. *See* ECF No. 28.

ability to supervise, monitor and restrain the patient." *Id.* at 416 (citation omitted).

In addition to alleging a legal duty owed the plaintiff, it must be alleged in the complaint that the defendant breached that duty by alleged negligent acts or omissions. FLA. JURIS. 2D Negligence § 152. One who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. *See Garrison Retirement Home v. Hancock,* 484 So.2d 1257, 1262 (Fla. 4th DCA 1985) (retirement home that assumed and undertook care and supervision of retirement home resident owed duty to exercise reasonable care in supervision of resident's activities).

Here, Gault alleges that the VA nurses breached the duty of care owed him (1) by negligently adjusting his room temperature, which rendered the room uninhabitable, and then by failing to provide him with a suitable place to sleep for fifteen (15) hours, which exacerbated his mental illness, ECF No. 26 at 9; and (2) by failing to de-escalate his manic agitation, making it medically necessary to seclude and sedate him, *id*. at 10. The first alleged breach does not require any professional judgment, whereas the second arguably does. So, Plaintiff satisfies the "breach of duty" prong by alleging that the nurses increased his room temperature to unbearable heat levels

and then failed to provide him with an adequate place to sleep for fifteen (15) hours, worsening his manic state.

Next, even though a person or persons engage in negligent acts or omissions, "there can be no recovery for an injury which was not a reasonably foreseeable consequence of such person's negligence." *Jolly v. Ins. Co. of N. Am.*, 331 So.2d 368, 371 (Fla. 3rd DCA 1976).  To be foreseeable, the negligent act must be such that a person, by prudent human foresight can anticipate that it will likely result from the act or failure to act. *Cone v. Inter Cty. Tel. & Tel. Co.* 40 So.2d 148 (Fla. 1949); *Langevin v. Gray Drug Stores, Inc. of Miami*, 216 So.2d 70 (Fla. 3rd DCA 1968).  Under the "but-for" "causation-in-fact-test" to constitute proximate cause there must be such a "natural, direct, and continuous sequence" between the negligent act or omission and the plaintiff's injury that it can reasonably be said that *but for* the negligent act or omission the injury would not have occurred.   *Deese v. McKinnonville Hunting Club, Inc*. 874 So.2d 1282, 1287 (Fla. 1st DCA 2004) (citations and internal quotation marks and alterations omitted).

In his complaint, Gault alleges that the VA nurses should have reasonably foreseen that "sleep deprivation would have deleterious effects on patients suffering from acute manic episodes."  ECF No. 26 at 12.

Further, Gault says "but-for" his sleep deprivation, he would not have suffered "such severe emotional distress" that he became a "danger" to himself and others. *Id*. Gault further alleges that the unnecessary sleep deprivation caused his medical condition to deteriorate, causing him medical harm. *Id*.

In view of the above, the Court concludes that Gault states a claim for ordinary negligence in a medical setting under Florida law.

### B. Negligent Infliction of Emotional Distress.

The result is different, however, with respect to Gault's NIED claims. Generally, to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact. *See Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 206 (Fla. 2007) (quoting *R.J. v. Humana of Fla., Inc.*, 652 So.2d 360, 362 (Fla.1995) (other citation omitted). The rationale supporting the impact rule is that "the existence of emotional harm is difficult to prove, resultant damages are not easily quantified, and the precise cause of such injury can be elusive." *Rowell v. Holt*, 850 So.2d 474, 478 (Fla. 2003) (citation omitted). "'[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.'"

*Gracey v. Eaker*, 837 So.2d 348, 355 (Fla. 2002) (alteration in original) (quoting *R.J.*, 652 So.2d at 362). Thus, the impact rule has been applied as a "limitation to assure a tangible validity of claims for emotional and psychological harm." *Rowell*, 850 So.2d at 478 (citations omitted).

"The essence of impact . . . is that [an] outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter the plaintiff's body." *Zell v. Meek*, 665 So.2d 1048, 1050 n.1 (Fla. 1995) (quoting *Eagle-Picher Indus., Inc. v. Cox*, 481 So.2d 517, 527 (Fla. 3rd DCA 1985)).

*Willis v. Gami Golden Glades, LLC*, 967 So.2d 846, 848-49 (Fla. 2007) is instructive on the contours of the impact rule. In *Wilis* a plaintiff was robbed in a parking lot after a hotel security guard told her to park there. The robber held a gun to the plaintiff's head and plaintiff heard the gun click as if firing. The robber thereafter demanded that plaintiff lift her clothing, and he patted her down on her exposed body. *Id*. The Florida Supreme Court held that the robber's conduct constituted an "impact" for purposes of whether plaintiff stated a negligent infliction of emotional distress claim against the hotel owner and security guard. The Court ruled that not all emotional distress had to stem from the impact. Rather, in that case, it could flow from the robbery as a whole. *Id.; cf. Eagle-Picher*, 481 So.2d at 526

(explaining that an impact allows recovery for emotional distress "stemming from the incident during which the impact occurred, and not merely the impact itself") (citation omitted).

Likewise, in a case where a woman suffered a heart attack after being trapped in an elevator, the Court allowed her recovery for NIED against the property owner but only if her jump to safety from the elevator (the "impact") at least partially caused her emotional distress. *Arditi v. Grove Isle Ass'n, Inc.*, 905 So.2d 151, 153 (Fla. 3d DCA 2004).

In the present case, to assert a NIED claim against the Government Gault must allege that the impact he sustained—the injection of a sedative—was closely linked to Gault's emotional distress. On the facts alleged, however, Gault's emotional distress was not sufficiently related to the injection. Rather, Gault alleges that his heightened emotional distress was caused by sleep deprivation that culminated in the VA personnel sedating him. Thus, the injection was merely the remedy aimed at alleviating Gault's suffering. Gault admits that the sedative was administered during a medical emergency to "calm [his] severe agitation and induce sleep." ECF No. 26 at 6. Had the nurses failed to sedate him, Gault also admits that he could have harmed himself or others. Gault does not contest that he was out of control when VA personnel administered the shot. Consequently, the administration

of the injection is not linked to the exacerbation of this medical condition. As such, Plaintiff's NEID claim fails because the administration of the injection—the alleged impact—is not connected to the alleged injury in this case.

Finally, as the Government points out, allowing patients to sue treating doctors and nurses under these circumstances would "open the flood gates to thousands of claims filed by disgruntled patients, who, for whatever reason, simply did not like the treatment prescribed, however proper or essential that treatment might be." ECF No. 28 at 10. Importantly, Gault does not allege that VA personnel administered the wrong drug, or that the sedative did not work, or that he suffered any physical injury from the injection (not even a sore arm).

In sum, the Court concludes that this case is distinguishable from the Florida cases that allowed a NIED claim to go forward where the impact sustained did not cause any physical injury. Gault does not allege that his emotional distress flowed from the injection. Rather, the injection alleviated Gault's distress. Additionally, because the NIED claim overlaps with the professional medical judgment of VA personnel, who determined that the injection was medically necessary, the claim is also due to be dismissed as barred by the statute of repose (as previously ordered by the Court).

## IV.  Conclusion

For the above reasons, it is respectfully **RECOMMENDED** that:

    1. Defendants' Motion to Dismiss, ECF No. 28, should be **GRANTED in part** and **DENIED in part.**

    2.  Plaintiff's claim for negligent infliction of emotional distress should be **DISMISSED with prejudice**.  Plaintiff's claim for ordinary negligence should be permitted to move forward.

**IN CHAMBERS** this 8th day of February 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.