IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RUSSELL KEITH GAULT,

      **Plaintiff,**

**v.**                                  **Case No. 1:20-cv-123-AW-HTC**

**UNITED STATES OF AMERICA,**

      **Defendant.**

_____/

## ORDER GRANTING MOTION TO DISMISS

This Federal Tort Claims Act suit is based on alleged negligence during Russell Gault's treatment for a manic episode. I dismissed Gault's first amended complaint for lack of subject-matter jurisdiction over any medical malpractice claim—which is time-barred by Florida's statute of repose—and for failure to state a negligent infliction of emotional distress (NIED) claim, because Gault failed to allege an impact that contributed to his emotional distress. ECF No. 25. After Gault repleaded, ECF No. 26 (SAC), the government moved to dismiss, arguing that Gault has again failed to state an NIED claim and that, at any rate, his claim still sounds in medical malpractice.[1] ECF No. 28 at 4, 6.

---

[1] The government suggests a few times that Gault's Second Amended Complaint was untimely. *See* ECF No. 28 at 1 n.1, 7. I decline to reach this issue because the government neither argues the point nor relies on it when requesting relief. *See id.* at 10 (requesting dismissal on jurisdictional and pleading grounds).

The magistrate judge issued a report and recommendation agreeing that Gault failed to cure his NIED pleading deficiency.[2] ECF No. 30 at 2. I have reviewed that report and recommendation and considered de novo the issues each side raised in response. ECF Nos. 31, 32, 33. I conclude that, although Gault cured the NIED pleading deficiency identified in my earlier dismissal order, his colorable allegations fall within the scope of Florida's medical malpractice scheme. Because Gault's claim remains time-barred under that scheme, I now dismiss his Second Amended Complaint for lack of subject-matter jurisdiction, this time without leave to amend.

## I.   NIED THEORY

As noted before, a plaintiff who has suffered an impact may "recover[] for emotional distress stemming from the incident during which the impact occurred," even without a physical injury. *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 526 (Fla. 3d DCA 1985) (citation omitted). Still, the plaintiff must allege that that impact contributed to his emotional distress in some way. *See Arditi v. Grove Isle Ass'n, Inc.*, 905 So. 2d 151, 153 (Fla. 3d DCA 2004).

The magistrate judge concluded that, as repleaded, "Gault's emotional distress was not sufficiently related" to the alleged impact—the injection of a sedative—to

---

[2] The magistrate judge concluded that Gault stated an "ordinary" (that is, non-NIED) negligence claim, ECF No. 30 at 2, but Gault has disclaimed any intent to proceed under any negligence theory besides NIED, *see* ECF No. 33 at 2-3; SAC at 1 (specifically alleging NIED claim).

state an NIED claim. ECF No. 30 at 13. In the magistrate judge's reading, Gault's "heightened emotional distress was caused by sleep deprivation," while "the injection was merely the remedy aimed at alleviating" that distress. *Id.* Because Gault admitted "he was out of control" and "could have harmed himself or others" without the sedative, the magistrate judge determined that "the injection [was] not linked to the exacerbation of" Gault's distress.[3] *Id.* at 13-14.

I disagree. Gault specifically alleged that "the injection, and the fact that it was administered by [Nurse] Delaney, caused [his] mania to become so severely aggravated, and [his] emotional distress to become so great, that for the only time during [his] stay, [he] directed [his] outrage at a specific VA employee" by shouting an obscenity at her. SAC at 6 ¶ 20. He also alleged that "the peak of [his] emotional suffering occurred as the injection needle wielded by [Nurse] Delaney entered [his] body." *Id.* at 12 ¶ 2. These allegations—which the court accepts as true at this stage, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—sufficiently plead that the injection contributed to his emotional distress.

---

[3] The magistrate judge also concluded that Gault's NIED claim is time-barred by the Florida medical-malpractice statute of repose because the claim "overlaps with the professional medical judgment of VA personnel, who determined that the injection was medically necessary." ECF No. 30 at 14. But Gault does not claim the injection itself was medically negligent; indeed, he acknowledges it was medically necessary. *See, e.g.*, ECF No. 33 at 4 ("I have never alleged that the injection administered to sedate me was negligent, IIED, or medical malpractice.").

That said, the Second Amended Complaint nonetheless fails to state an NIED claim. To the extent Gault alleges that Nurse Jordan negligently operated the hospital's HVAC system,[4] the room temperatures Gault alleges—between 65 and 80 degrees, *see* SAC at 3-4 ¶¶ 6, 8—are neither hot nor cold enough to trigger a general legal duty to avoid "unreasonable risk[]" of harm. *Cf. Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) ("The [negligence] claimant must first demonstrate that the defendant owed a 'duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.'" (quoting *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

Gault also alleges that the VA nurses breached a duty to provide him with a place to sleep. *See* SAC at 3-4 ¶¶ 7, 10, 12; *id.* at 9-10 ¶ 1.A. Gault cites—as sources of this duty—Maslow's Hierarchy of Needs and the parental responsibility to provide one's child with shelter. *See* ECF No. 29 at 5-6 ¶¶ 12-13. But Gault *was* provided a place to sleep; he simply didn't find it comfortable. *See* SAC at 3 ¶ 6

---

[4] *Compare* SAC at 3 ¶ 6 (Nurse "Jordan's negligent operation of the building's HVAC system caused my room to be uninhabitable . . . ."), *and id.* at 10 ¶ 2 ("But for [Nurse] Jordan negligently making my room uninhabitable the evening of 06 May 2016, I would not have needed an alternate location to sleep."), *with id.* at 9-10 ¶¶ 1.A-B (alleging, within "Breach of Duty" section, only "[f]ailing to provide me with a location to sleep" and "[f]ailing to de-escalate [Gault's] severe agitation").

(referring to "my room" becoming "uninhabitable"); *id.* at 4 ¶ 10 ("I repeatedly complained . . . that my room was uninhabitable").

Ultimately, then, Gault is claiming the nurses had a duty to provide him with a *different* place to sleep. *See* SAC at 3 ¶ 7 (alleging that [Nurse] Branca "negligently stated that there was no[]" other place for Gault to sleep); *id.* at 4 ¶ 12 (alleging that four nurses "negligently failed to offer [the seclusion room] to me" for sleeping). And, as discussed next, in that respect he's clearly asserting medical malpractice.[5]

"[M]erely because 'a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice.'" *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 310 (Fla. 2018) (quoting with approval *Joseph v. Univ. Behav. LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA 2011)). Things like spilling scalding hot tea on a patient, kicking a patient's foot while adjusting a chair's footrest, or failing to separate patients previously involved in altercations, constitute ordinary negligence even when occurring in a medical setting. *Id.* at 310-11 (first discussing *Joseph*, 71 So. 3d 913; then discussing *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468 (Fla. 3d DCA 2006); and then discussing *Tenet St. Mary's Inc. v. Serratore*, 869 So. 2d 729 (Fla. 4th DCA 2004)). "[F]or a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical

---

[5] The same is true of Gault's allegations of breach based on failure to de-escalate his manic episode—and Gault concedes as much. *See* ECF No. 29 at 5 n.1.

care or services, which require the use of professional judgment or skill." *Id.* at 305. Further, "proving a medical malpractice claim requires establishing that the allegedly negligent act 'represented a breach of the prevailing professional standard of care,' as testified to by a qualified medical expert." *Id.* at 309 (citing Fla. Stat. §§ 766.102(1) and (5)).

Any reasonable person would know, without expert testimony, that leaving altercation-prone people in close proximity—like spilling scalding liquid onto someone or kicking their foot—poses an unreasonable risk of harm. In contrast, the alleged duty to provide Gault with an alternate sleeping location is predicated on professional knowledge and judgment, such that proving breach would require expert testimony.

This is evident from the Second Amended Complaint. First, Gault directly alleges that, "[t]hrough their *education and training*, VA staff who provide treatment for bipolar patients should be well aware of the direct relationship between sleep duration, and improvement of manic symptoms." SAC at 3 ¶ 5 (emphasis added). He similarly alleges that, "[t]hrough their *education and training*, VA staff who provide treatment for bipolar patients should be able to easily foresee that sleep deprivation would have deleterious effects on patients suffering from acute manic episodes." *Id.* at 12 ¶ 3 (emphasis added).

Further, Gault cites medical journals for the proposition that sleep constitutes medical treatment for a manic patient (and lack thereof can worsen symptoms). *See id.* at 3 ¶ 4 ("Sleep is vital for treating manic episodes." (citing National Institutes for Health)); *id.* at 3 ¶ 5 ("Sleep duration is more important than medication in the treatment of acute mania . . . ." (cleaned up) (citing same)); *id.* at 4 ¶ 9 ("[S]leep deprivation can precipitate mania . . . ." (citing Psychology Today)). And he cites a medical journal to allege that "'[a]ll nurses owe a legal duty of care to their patients,' and nurses will 'have a higher duty of care than someone who has limited or no medical knowledge.'" SAC at 9 ¶ 2 (quoting Nursing Standard) (marks added); *see also* ECF No. 29 at 4 ¶ 4 (quoting same journal in response to government's motion to dismiss). Finally, Gault cites the VA's *clinical* guidelines as establishing a relevant duty of care. SAC at 9 ¶ 1.A ("Providers need to assist [bipolar] patients in keeping regular routines (e.g., bed times, wake times, exercise) and minimizing the impact of events that could disrupt their moods and daily/nightly stability." (emphasis removed)).

In short, the Second Amended Complaint plainly shows that—in order to prove negligence here—Gault will need to establish that the VA nurses' conduct fell short of a professional standard of care when they failed to give Gault a different place to sleep during his manic episode. And he will need to present expert testimony to do so. For these reasons, Gault's claim is for medical malpractice and not NIED.

## II.   MEDICAL MALPRACTICE THEORY

In my earlier order, I already concluded that Florida's 4-year statute of repose has time-barred any medical malpractice claim arising from Gault's allegations in this case. ECF No. 25 at 2-3. As a result, I concluded that I lack subject-matter jurisdiction over any such claim. *Id.* at 3.

In response to the government's latest motion to dismiss, Gault now says the statute of repose should have been tolled during the 6 months the FTCA barred him from suing after filing his administrative claim. *See* ECF No. 29 at 12-15; *see also* 28 U.S.C. § 2675(a) (permitting filing of FTCA suit only after federal agency has "finally denied" administrative claim and, at claimant's option, deeming administrative claim finally denied if agency fails to act within 6 months). Gault's claim was less than a month late. *Compare* ECF No. 1 (reflecting filing date of May 22, 2020), *with* SAC at 3-6 ¶¶ 6-20 (alleging events occurring on May 6 and 7, 2016). So the tolling he proposes would render his claim timely.

Statutes of repose—which have different purposes and objectives than statutes of limitation—"generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) ("Statutes of repose effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" (quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010))). There is no reason to believe

Florida's medical-malpractice statute of repose is an exception. *Cf. Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1003 (Fla. 1991) ("Even if there were fraudulent concealment by Dr. Koch, however, we find the Bogorffs' complaint against Koch and the University of Miami barred by the repose period . . . ."); *Kush v. Lloyd*, 616 So. 2d 415, 421 (Fla. 1992) ("Because its application has the potential . . . of barring a cause of action before it accrues, Florida has enacted few statutes of repose. However, the medical malpractice statute of repose represents a legislative determination that there must be an outer limit beyond which medical malpractice suits may not be instituted.").

Some courts have held that the FTCA preempts Florida's medical-malpractice statute of repose, *see, e.g.*, *Huntoon v. United States*, 2017 WL 11500195, at *3 (N.D. Fla. Sep. 23, 2017) (applying *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483 (11th Cir. 2015), to find statute of repose conflict-preempted because it encourages plaintiffs to "rush[] in to court" before agency review is complete, thereby "hinder[ing] important purposes underlying the FTCA"), but I find that position unpersuasive. Gault could have complied with both statutes, even after allowing the administrative review process to run its course[6]—so the two don't conflict. More

---

[6] As the government points out, Gault had over 18 months during the repose period in which the FTCA permitted him to file suit, including "over 75 days after the VA denied his claim." ECF No. 36 at 4 ¶¶ 11-12.

importantly, the FTCA neither expressly nor impliedly preempts state statutes of repose; instead, it expressly *incorporates* state substantive law. *Augutis v. United States*, 732 F.3d 749, 754 (7th Cir. 2013) (first citing 28 U.S.C. § 1346(b); and then citing *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.")).

At bottom, Gault had the same 4-year repose period during which to sue as any plaintiff suing a private defendant. To permit tolling here would allow Gault more time than a private plaintiff has—something contrary to what the FTCA provides: a cause of action against the government in situations "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." § 1346(b)(1); *cf. also Benjamin v. U.S. Dep't of Just.*, 2022 WL 1567768, at *2 (11th Cir. May 18, 2022) (per curiam) ("Under the FTCA, the United States is subject to liability in a tort action *in the same manner, and to the same extent*, that a private individual would be under the law of the place where the tort occurred." (emphasis added)). Gault offers no convincing argument (or persuasive authority) that the court should do so.

I therefore conclude, as before, that Gault's medical malpractice claim is time-barred by Florida's statute of repose, such that the court lacks subject-matter jurisdiction over his complaint. Further, because amendment would be futile—under

the pleaded facts, Gault can only plausibly state a claim for medical malpractice—his complaint must be dismissed without leave to amend.

## CONCLUSION

The government's motion to dismiss (ECF No. 28) is GRANTED, and Gault's Second Amended Complaint (ECF No. 26) is DISMISSED without leave to amend. The clerk will enter judgment that says, "This case is dismissed for lack of subject-matter jurisdiction." The clerk will then close the file.

SO ORDERED on August 23, 2022.

s/ *Allen Winsor*_____
United States District Judge

11